US DISTRICT COURT INDEX SHEET

















MAM

3:05-MC-823 SEC V. TANNER

*1*

*CMP*

☐ ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
TOPEKA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| vs. | : |
| DAVID TANNER, Individually, and d/b/a CAPITAL ENHANCEMENT CLUB<br>ROCKY D. SPENCER<br>MARROC CORP.,<br>RICHARD P. KRINGEN, | : Civil Action No. 05-4057-SAC |
| Defendants, | : |
| and | : |
| MARGARET F. SPENCER,<br>OMNIBUS LLC,<br>VECTRA RESOURCES LLC, and<br>DYNAMIC ENVIRONMENTAL SOLUTIONS, INC. | : |
| Relief Defendants. | : |

05mc823

ECF DOCUMENT
I hereby attest and certify this is a printed copy of a document which was electronically filed with the United States District Court for the District of Kansas.
Date Filed: 5-4-05
RALPH L. DeLOACH, CLERK
By: _____ Deputy Clerk

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges:

### SUMMARY

1. From at least October 2004, Defendants defrauded investors of $15 million through their fraudulent offer and sale of securities referred to as a "private joint venture investment."

2. Operating under the name Capital Enhancement Club ("CEC"), Defendants falsely claim that CEC will pay monthly interest of approximately 7% to 11% (120% to 260% annually) from "trading in international markets." In reality, CEC's trading

program is nonexistent and the investor funds are being pocketed by the Defendants or transferred to an offshore bank designated under the USA Patriot Act as a "primary money-laundering concern," because of its facilitation of the movement of "dirty money."

3. In offering and selling the CEC securities, Defendants directly and indirectly, make misrepresentations and omissions of material facts concerning the nature of the investment, projected returns and the use of investor funds.

4. Of the $15 million invested, approximately $300,000 remains in domestic accounts, with no additional assets and no legitimate business activity. At least $1.5 million was misappropriated by Defendants Rocky D. Spencer ("Spencer"), a convicted felon and recidivist fraudster, and Richard P. Kringen ("Kringen"), one of CEC's salesmen. Following Defendant David Tanner's ("Tanner") instructions, CEC investors transferred at least $10.3 million to suspect offshore accounts at the above-referenced bank.

5. By engaging in the conduct described in this Complaint, Defendants directly or indirectly, singly or in concert, have engaged, and unless enjoined and restrained, will again engage in transactions acts, practices, and courses of business that constitute violations of Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), (c), & 77q(a)] and Section 10(b) of the Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

6. In order to protect the public interest, the Commission seeks to stop this fraudulent scheme and to preserve assets pending the final disposition of this litigation. The Commission therefore requests that the Court issue the following orders: 1) a

temporary restraining order and preliminary and permanent injunctions against future violations by Defendants, 2) an immediate freeze of the assets of Defendants and Relief Defendants, 3) an order requiring an accounting from Defendants and Relief Defendants, 4) an order prohibiting Defendants and Relief Defendants from destroying records, 5) an order permitting expedited discovery; 6) an order appointing a temporary receiver, 7) an order for the repatriation of funds, 8) an order allowing alternate service for Defendant Tanner, who resides outside the United States, and 9) an order providing such other equitable relief that may be deemed appropriate.

## JURISIDICTION AND VENUE

7.  This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78(aa)]. Defendants, directly and indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, practices and courses of business described in this Complaint.

8.  Venue is proper because many of the transactions, acts, practices and courses of business described below occurred within the District of Kansas, and defendant Kringen resides in Topeka, Kansas.

## DEFENDANTS

9.  **David Tanner**, age unknown, was last purported to reside in the Turks and Caicos Islands in the Caribbean. Tanner formed CEC as early as 2001 and still controls CEC; he is listed as CEC's managing partner and as its webmaster. In April 2001, Tanner registered the CEC website (www.ceclub.5u.com) and then posted it on the Internet in June 2001. From at least 2001 through December 2003, Tanner listed one of his e-Gold accounts in CEC newsletters as a depository for investor funds. At

*SEC v. David Tanner, et al.*  Page 3
COMPLAINT

Tanner's instruction, hundreds of CEC investors transferred $10.3 million to a Riga, Latvia, bank account. Currently, CEC is raising investor funds at a rate of $10,000 to $20,000 per day. Neither Tanner nor CEC are registered with the Commission in any capacity.

10. **Rocky D. Spencer**, age 43, is a resident of Newport News, Virginia, and is Marroc's president and secretary. On July 22, 1994 Spencer plead guilty to conspiracy to defraud the United States, money laundering, wire fraud and structuring transactions to evade reporting requirements. Spencer served 60 months. In 2003 Spencer filed for bankruptcy. Spencer is not registered with the Commission in any capacity.

11. **Marroc Corp.** is a Virginia corporation, controlled by Spencer, with its principal place of business at Spencer's residence in Newport News, Virginia. Since inception of CEC's website, which lists Marroc's bank account as an option for funding a CEC investment, the company received at least $5 million from CEC investors. Marroc is not registered with the Commission in any capacity.

12. **Richard P. Kringen**, age 68, a resident of Topeka, Kansas, is a CEC salesman who received at least $11,000 in apparent commission payments from Marroc. Kringen is the subject of a 1994 cease-and-desist order issued by the State of Kansas for previously operating a fraudulent high-yield investment scheme. Kringen is not registered with the Commission in any capacity.

### RELIEF DEFENDANTS

13. **Margaret F. Spencer** ("M. Spencer") is the mother of Rocky Spencer and resides at the same address as Spencer in Newport News, Virginia. During January

and February 2005, M. Spencer received at least $68,000 of CEC investor funds for no apparent consideration. M. Spencer is listed as a signatory on Marroc bank accounts.

14. **Omnibus LLC** is a Nevada limited liability company that, without providing any known services, received $100,000 of CEC investor funds from Marroc.

15. **Vectra Resources, LLC** is a Nevada limited liability company with its registered office in Las Vegas, Nevada. For no apparent consideration, Vectra received $160,000 in investor funds from Marroc in February of 2005.

16. **Dynamic Environmental Solutions, Inc.** ("DES") is located in Ponce, Puerto Rico. For no apparent consideration, Dynamic received $400,000 in investor funds from Marroc.

## STATEMENT OF FACTS

### CEC's Secret Pitch Meetings

17. CEC relies primarily on current investors, acting as "sponsors," to offer its investments in private, invitation-only meetings. Many of the attendees and prospective CEC investors are senior citizens.

18. Kringen hosted CEC meetings, including one as recently as February 3, 2005, in Overland Park, Kansas.

19. In these meetings, Kringen tells attendees that CEC is a nine-year old, invitation-only, private investment club with over 80,000 members located in 120 countries. According to Kringen, CEC is operated by four partners: David Tanner and three unnamed partners, two who live in England and one who lives in Germany.

20. Kringen tells prospective investors at CEC meetings that the minimum investment is $500, but that $2000 is recommended. According to Kringen, investors will receive interest of 6.79% to 11.26% interest, compounded monthly.

21. Prospective investors are also told that they will be further rewarded for bringing in new "downline" investors. According to Kringen, investors will receive increased monthly interest of between .0058% and .0083%, depending on the number of investors recuited. Investors, however, are not allowed to withdraw funds for 6 months and, after that, are limited to withdrawals of $1,000 per month. Kringen also boasts of may CEC investors and claims that his initial $500 investment now generates $65,000 a month.

22. Kringen further promotes the secretive nature of the CEC investment. He claims that the partners have not revealed to him the exact nature of the investments made by CEC, only disclosing that the investments involve "trading in international markets." And according to Kringen, CEC accounts are maintained offshore. Prospective investors are further told that CEC safeguards its privacy by changing fax numbers every month and by using Internet based e-currencies for transactions. Finally, to provide a sense of urgency to invest, prospective investors are told that the investment program expires in 2008, so "time is of the essence."

### CEC'S Offering Materials and Internet Website

23. At the meetings, Kringen distributes offering materials to prospective investors. These materials highlight CEC features including free membership, a low minimum investment of $500, monthly interest from 6.79% to 11.26% percent to be compounded monthly or withdrawn, and the ability to conduct business with CEC in private and with anonymity.

24. Kringen and other CEC sponsors do not collect investment funds at the meetings. Instead, prospective investors are directed to CEC's website, where they can apply for membership by providing personal contact information and the sponsor's name.

25. To maintain CEC's privacy, investors are required to establish an e-mail account with Safe-Mail (www.safe-mail.net), the sole medium of communication between CEC and its investors. Safe-Mail, an Israeli company, offers private e-mail accounts.

26. Once registered, each investor receives a CEC account number, instructions on funding the account and an electronic copy of a Joint Venture Agreement ("JVA"). The JVA includes, among other things, an attestation that the new investor is neither an "informant" nor "associated with any governmental agency." CEC requires each new investor to execute the JVA and return it to CEC via facsimile.

27. Upon establishing an account, CEC provides the investor, via e-mail, three options for funding the account. First, with prior notice by e-mail to Tanner, the investor may wire transfer funds directly to CEC's offshore account in Riga, Latvia without any service charges or fees. Second, the investor may open an e-currency account and transfer the amounts into Marroc's e-currency account. Third, the investor may send a cashier's check or money order to Marroc's address in Newport News, Virginia or wire transfer funds directly to Marroc's bank account in Virginia. Before transferring e-currency or sending a cashier's check or money order to Marroc, the CEC investor is required to send an e-mail to sales@instantgold.net, one of Spencer's e-mail accounts, indicating the CEC JVA number and the amount of the deposit.

28. CEC investors receive a monthly newsletter and Monthly Financial Reports ("MFRs") from Tanner through their Safe-Mail e-mail account. Generally, these

*SEC v. David Tanner, et al.*                                                                                                        Page 7
**COMPLAINT**

newsletters provide the new facsimile numbers and reiterate the three options that investors can utilize to send additional funds to CEC. The MFRs typically show that investors earned approximately 7% to 11% monthly and list downline investors and additional earnings derived from recruitment.

### *Misrepresentations and Omissions*

29. The Defendants, in furtherance of their scheme to defraud, have made numerous misrepresentations and omissions of material fact including but not limited to the following:

  a) That CEC generates returns from a secret trading program run by the United States Federal Reserve.

  b) That CEC has been successful in this type of secret trading for 8 1/2 years.

  c) Monies invested in CEC are earning approximately 7% to 11% monthly (120% to 260% annually).

  d) Non-affiliated investors were made rich by CEC's secret trading activity.

  e) Defendants fail to disclose to investors that their funds will not be used in a secret trading program, but rather will be misappropriated by Tanner, Spencer, Kringen and others and used to pay Ponzi-type payments to earlier investors.

  f) Defendants fail to disclose to investors that monies sent to Marroc Corp. are under the control of Spencer, a convicted felon and recidivist fraudster who, in 2002, filed for bankruptcy protection.

  g) Defendants fail to disclose investors that Kringen was the subject of a 1994 cease-and-desist order issued by the State of Kansas.

  h) The Defendants fail to disclose that the Latvian bank to which they wire funds has been designated by the United States Treasury Department as a primary money laundering concern.

### Misappropriation of Investor Funds

30. Once in control of investor funds, Tanner and Spencer direct a series of transfers inconsistent with any legitimate investment.

31. For example, account records from Tanner's electronic "e-gold" account show that he routinely paid "monthly earnings" to prior investors immediately from deposits received from later investors. Additionally, Marroc's bank records show over $1.1 million newly deposited investor funds have been used to make payments to other investors. This type of activity is the hallmark of a fraudulent Ponzi scheme.

32. From investor funds deposited into Marroc bank accounts, Spencer has misappropriated over $350,000 for his personal use, including $170,000 in cash, $69,000 to his brokerage account, $21,000 to purchase a car, and $6,100 for plastic surgery. Kringen received at least $11,000 from Marroc in apparent sales commissions. The Relief Defendants also received payments from Marroc for no apparent consideration, including $68,000 to M. Spencer, $160,000 to Vectra Resources, $100,000 to Omnibus and $400,000 to DES.

### CLAIMS

### FIRST CLAIM
### Violations of Section 17(a) of the Securities Act
(All Defendants)

33. Plaintiff Commission repeats and incorporates paragraphs 1 through 32 of this Complaint by reference as if set forth *verbatim*.

34. Defendants, directly or indirectly, singly or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce and by use of the mails, have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of

untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit.

35.   As part of and in furtherance of their scheme, Defendants directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material fact and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those statements and omissions set forth in paragraphs 1 through 32 above.

36.   Defendants made the above-referenced misrepresentations and omissions knowingly or with recklessness regarding the truth. Defendants were also negligent in their actions regarding the representations and omissions alleged herein.

37.   By reason of the foregoing, Defendants have violated, and unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### SECOND CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
(All Defendants)

38.   Plaintiff Commission repeats and incorporates paragraphs 1 through 32 of this Complaint by reference as if set forth *verbatim*.

39.   Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase and sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed

devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

40. As a part of and in furtherance of their scheme, Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in paragraphs 1 through 32 above.

41. Defendants made the above-referenced misrepresentations and omissions knowingly or with recklessness regarding the truth.

42. By reason of the foregoing, Defendants have violated and, unless enjoined, will continue to violate the provisions of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### FOURTH CLAIM
#### Violations of Sections 5(a) and 5(c) of the Securities Act
(All Defendants)

43. Plaintiff Commission repeats and incorporates paragraphs 1 through 32 of this Complaint by reference as if set forth *verbatim*.

44. Defendants, directly or indirectly, singly or in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and has been, directly and indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale; and (c) making use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

45. As described in paragraphs 1 through 32, Defendants' securities were offered and sold to the public through a general solicitation of investors. No registration statements were ever filed with the Commission or otherwise in effect with respect to these transactions.

46. By reason of the foregoing, Defendants violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### FIFTH CLAIM
### Claim against Relief Defendants as Custodian of Investor Funds

47. Plaintiff Commission repeats and incorporates paragraphs 1 through 32 of this Complaint by reference as if set forth *verbatim*.

48. Relief Defendants received funds and property from one or more of the Defendants, which are the proceeds, or are traceable to the proceeds, of the unlawful activities of Defendants, as alleged in paragraphs 1 through 32, above.

49. Relief Defendants obtained the funds and property alleged above as part of and in furtherance of the securities violations alleged in paragraphs 1 through 32 and under circumstances in which it is not just, equitable or conscionable for them to retain the funds and property. As a consequence, Relief Defendants have been unjustly enriched.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff Securities and Exchange Commission respectfully requests that this Court:

I.

Temporarily restrain and preliminarily and permanently enjoin all Defendants from violations of Sections 5(a), 5(c) and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

II.

Enter an Order *instanter* freezing the assets of Defendants and Relief Defendants, and directing that all financial or depository institutions comply with the Court's Order.

III.

Enter an Order *instanter* that all Defendants and Relief Defendants shall file with the Court and serve upon Plaintiff Commission, no later than 96 hours from entry of this Order, or three days prior to a preliminary hearing in this matter, whichever is sooner, an accounting, under oath, detailing all of their assets and all funds or other assets received from investors and from one another.

IV.

Enter an Order that all Defendants and Relief Defendants be restrained and enjoined from destroying, removing, mutilating, altering, concealing or disposing of, in any manner, any of their books and records or documents relating to the matters set forth in the Complaint, or the books and records and such documents of any entities under their control, until further order of the Court.

V.

Enter an Order that the parties may commence discovery immediately, and that notice periods be shortened to permit the parties to require production of documents, or the deposition of any entity or person, on 96 hours notice.

VI.

Enter an Order requiring all Defendants and the Relief Defendant to disgorge an amount equal to the funds and benefits they obtained illegally or inequitably as a result of the violations alleged herein, plus prejudgment interest on that amount.

VII.

Enter an Order imposing civil penalties against all Defendants pursuant to Section 20(d) of the Securities Act, [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act, [15 U.S.C. § 78u(d)], for the violations alleged herein.

VIII.

Enter an Order requiring Defendants and Relief Defendant to repatriate all funds and assets that were obtained from the activities described in the Complaint and are now located outside the jurisdiction of the Court.

IX.

Enter an Order authorizing alternate service for Defendant Tanner, who resides outside the United States. The Commission requests it be allowed to serve Tanner by any method permitted by Rule 4 of the Federal Rules of Civil Procedure, including e-mail or letters rogatory.

X.

Enter an Order for such further relief as this Court may deem just and proper.

For the Commission, by its attorneys:

Respectfully submitted,

*Timothy P. Davis*

TIMOTHY J. DAVIS
Kansas Bar No. 18647
Texas Bar No. 00798134

Attorney for Plaintiff
Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6438
(817) 978-4927 (fax)
e-mail: davistp@sec.gov

Of Counsel:

DOUGLAS A. GORDIMER
Maryland Bar Member
Securities and Exchange Commission

RONDA J. BLAIR
Nebraska Bar No. 19010
Securities and Exchange Commission



BRIAN M. HOLLAND
(816) 460-5329
EMAIL: BHOLLAND@LATHROPGAGE.COM
WWW.LATHROPGAGE.COM

2345 GRAND BOULEVARD
SUITE 2800
KANSAS CITY, MISSOURI 64108-2684
(816) 292-2000, FAX (816) 292-2001

December 23, 2005

**VIA FEDEX**

Clerk of the Court
4290 Edward J. Schwartz
United States Courthouse
940 Front Street
San Diego, CA 92101

Dear Sir or Madam:

    Enclosed for filing as a miscellaneous case, please find an original and two copies of a certified Complaint and Order Appointing Receiver. Also enclosed please find our firm check in the amount of $39.00 and a return Federal Express envelope for mailing file stamped copies back to our office.

    This filing is made pursuant to 28 U.S.C. 754, which permits a Receiver to register the Complaint and Order Appointing Receiver in any United States District Court where Receiver has cause to believe assets of the defendant may be located.

    If you have any questions or comments, please call.

Very truly yours,

LATHROP & GAGE L.C.

By: *Brian M. Holland (dg)*
       Brian M. Holland

BMH:dg
Enclosures

CC 1553466v1

**Change Your Expectations.**

KANSAS CITY • OVERLAND PARK • ST. LOUIS • JEFFERSON CITY • SPRINGFIELD • BOULDER • WASHINGTON D.C.* • NEW YORK
*LATHROP & GAGE DC PLLC-AFFILIATE